UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| **SAM S. RUSSO,** | ) |
| Plaintiff, | ) ) ) |
| v. | )  Civil Action No: _____ |
| | ) |
| **TOWNSHIP OF PLUMSTED,** | ) |
| **RONALD S. DANCER,** Mayor (former) and | ) |
| Business Administrator (current), Plumsted | ) |
| Township, **MICHAEL LYNCH,** Public Safety | ) |
| Director, Plumsted Township (former), | ) |
| **GLENN RICCARDI,** Construction Official, | ) |
| Zoning Officer, Plumsted Township | ) |
| (current), **MAUREEN S. FRANCIS,** County | ) |
| Tax Assessor, Plumsted Township (current), | ) |
| **DAVID FRIEDMAN,** District Director, | ) |
| Ocean County Soil Conservation District | ) |
| (former), **RYAN P. ALLEN,** Senior Planner, | ) |
| Farmland Preservation Program, Ocean | ) |
| County Department of Planning (current), | ) |
| | ) |
| Defendants. | ) |

## COMPLAINT

The Plaintiff, Sam S. Russo ("Plaintiff"), moves this Court for entry of judgment in his favor against the Defendants Township of Plumsted, Ronald S. Dancer, Michael Lynch, Glenn Riccardi, Maureen S. Francis, David Friedman, and Ryan P. Allen ("Defendants") and in support of such Complaint avers as follows:

### NATURE OF ACTION AND JURISDICTION

1.  This is a civil action under Title 42, United States Code, Section 1983 ("42 U.S.C. Section 1983," "Section 1983"), seeking damages and injunctive relief against Defendants for committing acts, under color of law, with the intent and for the purpose of depriving Plaintiff of rights secured

under the Constitution and laws of the United States, specifically, Plaintiff's Fifth Amendment rights against the "regulatory taking" of property as applied to state and local governments under the Fourteenth Amendment.

2. This case arises under the United States Constitution and 42 U.S.C. Sections 1983 and 1988, as amended. This Court has jurisdiction in this matter pursuant to 28 U.S.C. Sections 1331 and 1343. The declaratory and injunctive relief sought is authorized by 28 U.S.C. Sections 2201 and 2202, 42 U.S.C. Section 1983 and Rule 57 of the Federal Rules of Civil Procedure.

3. Plaintiff brings this action resulting from damages incurred due to the unlawful termination of Plaintiff's farmland designation for his property located at 27 Hopkins Lane, Cream Ridge, New Jersey (Block 58, Lots 13 and 14 and Block 61, Lot 14) on or about August 25, 2011. Plaintiff was wrongfully denied farmland designation in violation of his federal constitutional right against the unlawful taking of property as conferred to him pursuant to the Fifth Amendment, and incorporated by the Fourteenth Amendment.

4. This Court is an appropriate venue for this cause of action pursuant to 28 U.S.C. Section 1391(b)(2). The actions complained of took place in this judicial district; evidence relevant to the allegations are maintained in this judicial district; the property in question is located in this judicial district; Plaintiff's farm activities occurs in this judicial district; and Defendants Township of Plumsted and Ronald S. Dancer in his capacity as Plumsted Township's Business Administrator are located and/or conduct business relevant to this cause of action in this judicial district.

## PARTIES

5. Plaintiff SAM S. RUSSO ("Plaintiff" or "Russo") is a business man conducting farming operations at his approximately 100 acre property in Plumsted Township, New Jersey.

6.  The Defendant, RONALD S. DANCER ("Defendant Dancer" or "Dancer"), is a citizen and resident of New Jersey, and was and is at all times material to the allegations in this Complaint, acting in his former capacity as Mayor of Plumsted Township, or in his current capacity as Business Administrator and board member for Plumsted Township's Planning, Zoning, Farmland Preservation, Alcohol and Drug Alliance boards, is employed by the Township of Plumsted, New Jersey, and was and is acting under color of state law.

7.  The Defendant, MAUREEN S. FRANCIS ("Defendant Francis" or "Francis"), is a citizen and resident of New Jersey, and was and is at all times material to the allegations in this Complaint, acting in her capacity as a county Tax Assessor for Plumsted Township, New Jersey and was and is acting under color of state law.

8.  The Defendant, GLENN RICCARDI ("Defendant Riccardi" or "Riccardi"), is a citizen and resident of New Jersey, and was and is at all times material to the allegations in this Complaint, acting in his capacity as Construction Official/Zoning Officer for Plumsted Township, employed by the Township of Plumsted, New Jersey and was and is acting under color of state law.

9.  The Defendant, MICHAEL LYNCH ("Defendant Lynch" or "Lynch"), is a citizen and resident of New Jersey, and was at all times material to the allegations in this Complaint, acting in his former capacity as Public Safety Director, Plumsted Police Department, Plumsted Township, employed by the Township of Plumsted, New Jersey and was acting under color of state law.

10. The Defendant, RYAN P. ALLEN ("Defendant Allen" or "Allen"), is a citizen and resident of New Jersey, and was and is at all times material to the allegations in this Complaint acting in his capacity as Senior Planner, Farmland Preservation Program, Ocean County Department of

Planning, serving, among other towns, Plumsted Township, New Jersey, and was and is acting under color of state law.

11. The Defendant, DAVID FRIEDMAN ("Defendant Friedman" or "Friedman"), is a citizen and resident of New Jersey, and was at all times material to the allegations in this Complaint acting in his former capacity as the District Director of the Ocean County Soil Conservation District, serving, among other towns, Plumsted Township, New Jersey, and was acting under color of state law.

12. The Defendant, TOWNSHIP OF PLUMSTED ("Defendant Plumsted Township" or "Plumsted Township") is a political subdivision of the State of New Jersey, for which: Defendant Dancer previously served as its Mayor, and currently serves as its Business Administrator as well as a board member for its Planning, Zoning, Farmland Preservation, Alcohol and Drug Alliance boards; Defendant Francis currently serves as its Tax Assessor; Defendant Riccardi currently serves as its Construction Official/Zoning Officer; Defendant Lynch formerly served as Public Safety Director for the Plumsted Police Department; Defendant Allen currently serves as the Senior Planner, Farmland Preservation Program, for the Ocean County Department of Planning, which serves, among other towns, Plumsted Township; and for which Defendant Friedman formerly served as the District Director of the Ocean County Soil Conservation District, which serves, among other towns, Plumsted Township.

## FACTS

### The "Farm"

13. On or about February 19, 1998, Plaintiff Sam S. Russo purchased a tract of land approximately 71 acres in size, located at 27 Hopkins Lane, Cream Ridge, New Jersey, in Plumsted

Township ("the Property"). Russo purchased the land with the intent of operating a farm. While the land had previously been utilized as a farm, the prior owner of the acreage had allowed his farmland designation to lapse after failing to file with the Township of Plumsted the appropriate yearly Application for Farmland Assessment, NJ Form FA-1, which is due on or before August 1st of each calendar year to obtain and/or maintain a farmland designation.

14. The Application for Farmland Assessment is filed by farmers seeking farmland designation and the benefits of such a designation under the New Jersey Farmland Assessment Act of 1964 ("the Act"). Under this Act, individuals with at least five contiguous acres being farmed producing gross sales of products of at least $500.00 per year for the first five acres, plus an average of $5 per acre for each acre over five, and who have devoted the land in question to agricultural or horticultural uses for at least two years prior to the tax year, can file an Application for Farmland Assessment within the township the property is housed. Activities defined as qualifying agricultural or horticultural uses include the raising, breeding, or grazing of any livestock and/or development and harvesting of cropland, and/or the growing of trees (woodland). If the conditions precedent are met and the Application is filed on or before August 1st of the pretax year, the individual is entitled to a farmland designation. The Farmland Assessment Act was enacted to protect agriculture in New Jersey by providing incentives for individuals to utilize large tracts of land for agricultural purposes and to deter these property owners from selling the land to developers. One of the biggest incentives the New Jersey Farmland Assessment Act offers is a tax incentive – specifically a 98 percent deduction of the individual's farmland tax bill.

15. After the purchase of the Property in 1998, and in accordance with the requirements of the New Jersey Farmland Assessment Act, Plaintiff Russo began cultivating and utilizing the land as a farm. Within the first year of ownership of the Property, Russo obtained, raised, bred and sold

hogs, fluctuating in count from 12 to 75 based upon breeding numbers and numbers sold. Also within the first year of ownership, Russo planted and harvested approximately 40 acres of rye straw.

16. In 1999 and 2000, Plaintiff Russo continued his farmland operations by maintaining, breeding, and selling between 12 and 75 hogs and increasing his rye straw crops an additional 10 acres to approximately 50 acres of land.

17. In 2001, Plaintiff Russo continued his farmland operations by maintaining, breeding, and selling between 12 and 75 hogs and increasing his rye straw crops an additional 10 acres to approximately 60 acres of land.

18. In 2002, Plaintiff Russo purchased additional acreage of approximately 26 acres, which was adjacent to his existing acreage. Russo continued his operations of raising, breeding and selling between 12 and 75 hogs, cultivating approximately 60 acres of rye straw crops, and utilizing the remaining acreage as woodlands.

19. From 2002 to in or about February of 2008, Plaintiff Russo continued his farmland operations by maintaining, breeding, and selling between 12 and 75 hogs, cultivating approximately 60 acres of rye straw crops, and utilizing the remaining acreage as woodlands. In 2007, Russo also acquired an additional acre of adjacent land.

20. In or about 2008, Plaintiff Russo cleared approximately 20 acres of woodland, wherein he placed additional penning for livestock. Otherwise, Russo continued his farmland operations as usual, with the maintenance, breeding, and selling of between 12 and 75 hogs, cultivating approximately 60 acres of rye straw crops, and utilizing the remaining acreage as woodlands, absent the 20 acres cleared for livestock.

21.     In or about 2009, Plaintiff Russo purchased an additional two acres of adjacent land, bringing the total size of the Property in question to approximately 100 acres. Russo also obtained approximately twelve Texas longhorns. Otherwise, Russo continued his farmland operations as usual, with the maintenance, breeding, and selling of between 12 and 75 hogs, cultivating approximately 60 acres of rye straw crops, and utilizing the remaining acreage as woodlands, absent the 20 acres cleared for livestock.

22.     In or about 2012, Plaintiff Russo altered his croplands to include the usual 60 acres of rye straw, with the addition of approximately 20 acres of corn and altering the 60 acres of rye straw in the off season with 60 acres of soybean. Russo had also increased his livestock in 2012 to include upwards of 90 hogs, twelve beef cattle, three horses, 23 sheep, three goats, and 25 chickens.

23.     As of August of 2013, Plaintiff Russo continues his farmland operations which includes 40 acres of corn, 60 acres of rye straw with an alteration on the off-season to soybean, 76 beef cattle, three dairy cows, ten horses, 40 sheep, upwards of 30 hogs, 12 goats and 40 chickens.

**The Farmland Designation**

24.     When Plaintiff Russo purchased the original 71 acre-portion of the Property in 1998, the prior owner had allowed the farmland designation for the parcel to elapse. Once such a designation is lost, any further farm operations must "restart" and operate continuously for a two-year period before a property owner can qualify for a farmland designation. In keeping with the requirements of the Farmland Assessment Act, Plaintiff Russo immediately began utilizing the Property as a farm. In order to "begin the clock" on the two-year farm operation timeframe set forth in the Act, Russo filed an Application for Farmland Assessment on July 29, 1998, and again on July 20, 1999.

In 2000, Plaintiff Russo received, and began to derive the intended benefits of, the Farmland Assessment Act.

25.     Plaintiff Russo continued to utilize his property for farmland operations from 1998 to the present, and in late July of each year, would dutifully file his Application for Farmland Assessment as required under the Act with the appropriate township official, specifically, Defendant Maureen S. Francis, Tax Assessor for Plumsted Township.

26.     In his applications, Russo would purposely exclude ten acres of land as property not specifically utilized for farm or woodland operations.  The ten acres purposely excluded from designation was and continues to be utilized for storage purposes.  From 2000 to 2010, Plaintiff Russo received farmland designation for approximately 90 of his 100 acres of property, the full amount of acreage sought in his applications.

27.     In or about 2010, Plaintiff Russo received a call from an individual he did not know and was not familiar with, who notified Russo that the Township of Plumsted had reduced its farmland designation of the Property from 90 acres to ten acres.  The individual that contacted Russo was Defendant Ryan P. Allen, Senior Planner, Farmland Preservation Program, Ocean County Department of Planning.  Plaintiff Russo never received notification of the reduction of the designation by Plumsted Township, or its tax assessor, Defendant Francis, nor was Russo provided a reason for the reduction.  To date, it is not clear how or why Defendant Allen knew of the farmland designation downgrade, or the extent of his involvement in the designation downgrade.

28.     After talking with Defendant Allen, Plaintiff Russo went to Defendant Francis and inquired as to the validity of Defendant Allen's statements.  Defendant Francis confirmed the reduction of farmland designation.  Russo asked why his designation was reduced, and was advised by

Defendant Francis that she had viewed an aerial photograph of the Property on Google Maps and saw the storage of scrap metals that Plaintiff Russo had obtained from a dismantled roller coaster and had placed on the ten acre parcel of the Property that had previously been excluded by Russo in his application for farmland assessment, and which had not received farmland designation. Defendant Francis was well aware of the activities at the Property, and as tax assessor, knew that ten of the 100 acres was purposely not designated as farmland. Further, Defendant Francis was aware, regardless of the ten acre holdback for storage, that only the smallest fraction of the 100 acres Plaintiff Russo possessed was affected by the storage of the dismantled roller coaster. Nevertheless, instead of only denying that portion of the Property for farmland eligibility, Defendant Francis took the extraordinary step of denying 80 of the designated 90 acres in question for farmland eligibility. Defendant Francis had and has direct involvement with Defendant Dancer as the former Mayor and now Business Administrator for the Township of Plumsted.

29.     In 2006, Plaintiff Russo agreed to store the dismantled roller coaster for a colleague, with an agreement that the coaster was to be sold by the colleague, or alternatively, gifted to Plaintiff Russo for use on the farm for additional structures or for scrapping. The roller coaster has been sold by Plaintiff Russo's colleague to an entity in Brazil, and is anticipated to be removed from the Property within the next six months.

30.     Plaintiff Russo thereafter entered into the tax appellate process in the tax year 2010 as required under law to appeal the downgrade of designated acreage by Defendant Francis. Plaintiff Russo also filed his Application for Farmland Assessment for the full 90 acres in question in late July, 2010. Plaintiff Russo's tax appeal was denied, and Russo continued to only receive farmland designation benefits for ten acres instead of the appropriate 90 acres.

31. In or about later July of 2011, Plaintiff Russo once again filed his Application for Farmland Assessment for the applicable 90 acres. On August 25, 2011, Plaintiff Russo received a copy of correspondence between Defendant Francis and Defendant Glenn Riccardi, Construction Offical/Zoning Officer for Plumsted Township, in which Defendant Francis advises that based upon "various reports and violations issued by various agencies" that no portion of the 100 acre Property would be considered eligible for farmland designation. Defendant Riccardi agreed to the disqualification of the Russo Property, despite his full knowledge that the vast majority of the 100 acre site was being utilized for farming. Further, Defendant Dancer sits on the Zoning Board, to which Defendant Riccardi answers.

32. To date, Plaintiff Russo continues to maintain the 100 acre Property as a farm, without the benefit of a farmland designation. Plaintiff Russo continues to timely file his Application for Farmland Assessment yearly, seeking a 90 acre designation. And to date, Plaintiff Russo has been denied any such designation for any acreage of his farm.

33. The failure to be able to obtain a farmland designation has seriously and significantly impared Plaintiff Russo's operations. Russo has been forced to sell off livestock, and non-related properties and equipment to fund continued farming operations at the Property. Each property tax quarter that comes due requires further liquidations of equipment, livestock and properties so that Plaintiff Russo can meet the high property taxes that accompanies a possession of such a large tract of land. The inability to derive any of the benefits afforded under the Farmland Assessment Act, despite the fact that Plaintiff Russo is clearly and unequivocally operating a farm on the Property, and despite the fact that the possession of such a large tract of land would only be for the operation of a farm, has and continues to limit Plaintiff Russo's ability to farm. Russo will not be able to continue to maintain the farm without the benefits of the farmland designation, resulting in

what will ultimately be a regulatory taking of his Property, in violation of the Fifth and Fourteenth Amendments to the United States Constitution.

**The Conspiracy**

34.     In or about January, 2009, the Plumsted Township Police Department was contacted by a neighbor of Plaintiff Russo's Property, complaining of noise from dirt bikes that were being driven around the Property by Plaintiff Russo's children.

35.     Defendant Lynch, Plumsted Township's Police Department's Public Safety Director, also a neighbor of Plaintiff Russo, thereafter ordered a helicopter fly-by of the Russo Property, during which time photographs and/or video was taken of the Property.  The images displayed nothing more than a few barn structures and open space.

36.     In the evening hours in or about March or April of 2009, Plaintiff Russo's children once again began riding their dirt bikes on the Russo Property.  Defendant Lynch, who heard the sounds of the dirt bikes, and was off-duty at the time, returned to the Property, climbed over the gate to the Property which was bound shut and contained a "no trespassing" sign, and verbally accosted Plaintiff Russo.  Defendant Lynch thereafter ordered a tow truck to the Property, presumably to tow the dirt bikes away.  Ultimately, Defendant Lynch did not facilitate the towing of the dirt bikes, however, no accord was reached between Plaintiff Russo and Defendant Lynch as to whether Plaintiff Russo was legally required to cease the operations of the dirt bikes based upon noise levels.

37.     In 2009, Plaintiff Russo's children would regularly ride their dirt bikes on the Russo Property.  Through a local noise ordinance, Plaintiff Russo was issued upwards of 50 tickets for violations to that ordinance.  In later 2009, it was determined that the Plumsted Township noise

ordinance was improperly drafted and therefore, unenforceable. Plaintiff Russo's tickets were dismissed.

38.     In or about December, 2009 or January 2010, in the later-evening hours, then Mayor of Plumsted Township Defendant Ronald S. Dancer called a meeting with, among others, the then-township business administrator and attorney, Defendant Lynch, Defendant Friedman, and a New Jersey Department of Environmental ("DEP") official at the Plumsted Municipal Building, 121 Evergreen Road, "SOS" Center, Plumsted Township, New Jersey. During the meeting, Defendant Dancer focused specifically on Plaintiff Russo, his Property, and the dirt bike "issue." Defendant Dancer consistently encouraged the DEP official to start an investigation of Plaintiff Russo's Property, alleging that the Property was being utilized for illegal dumping, despite the lack of any such evidence of dumping in the aerial photography and/or video Defendant Dancer had obtained through Defendant Lynch for the prior helicopter fly-by that had been conducted in early 2009.

39.     In earlier 2011, Plumsted Township adopted a new noise ordinance. Subsequent to that adoption, the Plumsted Police Department returned to Plaintiff Russo's Property and took noise readings from the dirt bikes. The dirt bike noise emissions were found to be below the legal noise limit under the new ordinance, and as a result of those readings, no new tickets were issued.

40.     During this time period in 2011, Defendant Dancer continued to seek out DEP involvement by and through Defendant David Friedman, the District Director of the Ocean County Soil Conservation District, who in turn continued to press the DEP to start an investigation at the Russo Property without any evidence of illegal dumping as erroneously asserted by Defendant Dancer.

41.     In or about mid-2011, the DEP started an investigation of the Russo Property for illegal dumping. To date, DEP investigations continue at the Russo Property.

42. The failure to be able to obtain a farmland designation has seriously and significantly impared Plaintiff Russo's operations. Plaintiff will soon no longer be able to maintain his farm, or pay the property taxes on the Property. The systematic abuse that Plaintiff Russo has suffered at the hands of Defendant Dancer and his subordinates and close political allies has effectively resulted in a regulatory taking of Plaintiff Russo's Property in violation of the Fifth and Fourteenth Amendments to the United States Constitution.

## CAUSES OF ACTION

## COUNT I

### Violation of Civil Rights Pursuant to Title 42 U.S.C. Sections 1983, 1988
### Violation of Fifth Amendment Deprivation of Property
(Against all Defendants)

43. Plaintiff realleges and incorporates herein by reference the allegations set forth in paragraphs 1-39 of this Complaint.

44. Defendant Dancer, in concert with the other Defendants, entered into an unlawful conspiracy to target and harass Plaintiff, and to financially harm Plaintiff so that he would no longer be able to operate or maintain his Property.

45. Defendants acted intentionally and with callous disregard for Plaintiff's statutory and constitutional rights.

46. In committing the acts complained of herein, Defendants acted under color of state law to deprive Plaintiff of certain constitutionally protected rights under the Fifth and Fourteenth Amendments to the Constitution of the United States including, but not limited to: a) the right to

be free of deprivation of property without due process of law; and b) the right to just compensation for taking of property.

47. In violating Plaintiff's rights as set forth above and other rights that will be proven at trial, Defendants acted under color of state law and conducted an unauthorized regulatory taking of Plaintiff's private property, as defined in *Pennsylvania Coal v. Mahon*, 260 U.S. 393, 415 (1922).

48. The excessive and warrantless regulation of Plaintiff's Property by Defendants, resulting in the unsupportable denial of his farmland designation, has directly and proximately resulted in the violation of Plaintiff's constitutional rights. Plaintiff has suffered general and special damages as set forth in this Complaint and is entitled to relief under 42 U.S.C. Section 1983.

49. The conduct of Defendants was willful, malicious, oppressive and/or reckless, and was of such a nature that punitive damages should be imposed in an amount commensurate with the wrongful acts alleged herein.

## PRAYER FOR RELIEF

WHEREFORE, Plaintff Sam S. Russo, requests judgment against Defendants as follows:

A. For appropriate compensatory damages in an amount to be determined at trial;

B. For appropriate punitive damages in an amount to be determined at trial;

C. For appropriate equitable relief against all Defendants as allowed by 42 U.S.C. Section 1983, including the enjoining and permanent restraining of these violations, and direction to Defendant to take such affirmative action as is necessary to ensure that the effects of the

unconstitutional and unlawful practices of Plumsted Township and its employees are eliminated and do not continue to affect Plaintiff or others;

D.      For an award of reasonable expenses incurred in this litigation, including reasonable attorney and expert fees, pursuant to 42 U.S.C. Section 1988(b) and (c); and

E.      For such other and further relief to which Plaintiff may show himself justly entitled.

**PLAINTIFF REQUESTS TRIAL BY JURY ON ALL ISSUES SO TRIABLE.**

Respectfully Submitted,

Dated:  August 23, 2013         /s/Susan McCabe_____
Susan McCabe, Esquire
The Law Offices of Susan McCabe
24 Carriage Way
Barnegat, New Jersey 08005
(609) 290-0257

Attorney for Plaintiff