UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| SAM S. RUSSO,<br><br>*Plaintiff,*<br><br>v.<br><br>TOWNSHIP OF PLUMSTED,<br>RONALD S. DANCER, Mayor (former) and<br>Business Administrator (current), Plumsted<br>Township, MICHAEL LYNCH, Public Safety<br>Director, Plumsted Township (former),<br>GLENN RICCARDI, Construction Official,<br>Zoning Officer, Plumsted Township<br>(current), MAUREEN S. FRANCIS, County<br>Tax Assessor, Plumsted Township (current),<br>DAVID FRIEDMAN, District Director,<br>Ocean County Soil Conservation District<br>(former), RYAN P. ALLEN, Senior Planner,<br>Farmland Preservation Program, Ocean<br>County Department of Planning (current),<br><br>*Defendants.* | Civil Action No. 13-5082 (PGS) (TJB)<br><br>**MEMORANDUM**<br><br>R E C E I V E D<br><br>JUL 1 1 2014<br><br>AT 8:30_____M<br>WILLIAM T. WALSH<br>CLERK |

**SHERIDAN, U.S.D.J.**

This matter comes before the Court on Defendant Ryan P. Allen's Motion to Dismiss Plaintiff Sam S. Russo's ("Russo" or "Plaintiff") Complaint for failure to state a claim pursuant to FED. R. CIV. P. 12(b)(6)[1], or in the alternative, Motion for Summary Judgment pursuant to FED. R. CIV. P. 56, or Motion for a More Definite Statement pursuant to FED. R. CIV. P. 12(e) (ECF No. 3). Defendants Township of Plumsted, Ronald S. Dancer, Michael Lynch, Glenn Riccardi and Maureen

---

[1] While Defendant Allen's Notice of Motion indicates that he seeks dismissal of Plaintiff's Complaint pursuant to FED. R. CIV. P. 12(b)(6), the Brief filed in support of that motion indicates that Defendant also seeks dismissal for lack of subject matter jurisdiction pursuant to FED. R. CIV. P. 12(b)(1). (Def. Allen's Br. in Supp. of Mot. to Dismiss ("Allen Br.") at 13) ("[T]he District Court does not have jurisdiction under the Tax Injunction . . . Act[,] 28 U.S.C. [§] 1341.").

S. Francis and Defendant David Friedman have filed separate motions requesting the same relief relying on the Brief and Certification filed in support of Defendant Allen's motion. (ECF Nos. 6, 18). Plaintiff, who owns property located in Plumsted Township, New Jersey, alleges that Defendants entered into an unlawful conspiracy to deny a farmland designation on that property in violation of his constitutional rights under the Fifth and Fourteenth Amendments to the United States Constitution. The Court decides this matter without oral argument pursuant to FED. R. CIV. P. 78(b). For the reasons set forth herein, Defendants' Motions to Dismiss are granted and Defendants' alternative Motions for Summary Judgment or for a More Definite Statement are dismissed as moot.

## I. BACKGROUND

### A. Parties

Plaintiff Sam S. Russo owns and conducts farming operations on an approximately 100 acre property located at 27 Hopkins Lane, Cream Ridge, New Jersey (Block 58, Lots 13 and 14 and Block 61, Lot 14) in Plumsted Township. (Compl. at ¶¶ 3, 5). Defendant Township of Plumsted is a municipality located in Ocean County. (*Id.* at ¶ 16). Defendant Ronald S. Dancer is the former Mayor of Plumsted who currently serves as the Township's Business Administrator. (*Id.* at ¶ 6). Defendant Maureen S. Francis currently serves as the Township's Tax Assessor. (*Id.* at ¶ 7). Defendant Glenn Riccardi currently serves as a Construction Code Official and Zoning Officer for the Township. (*Id.* at ¶ 8). Defendant Michael Lynch is the former Public Safety Director for the Township. (*Id.* at ¶ 9). Defendant Ryan P. Allen is a former Senior Planner with the Ocean County Department of Planning which administers the Farmland Preservation Program in Ocean County. (*Id.* at ¶ 10). Defendant David Friedman is the former District Director of the Ocean County Soil Conservation District which provides natural resource conservation services in Ocean County. (*Id.* at ¶ 11).

**B. Factual Background**

On or about February 19, 1998, Plaintiff Sam S. Russo purchased a tract of land, approximately seventy-one acres in size, located at 27 Hopkins Lane, Cream Ridge, New Jersey in Plumsted Township (the "Property"). (*Id.* at ¶ 13). While the Property had previously been utilized as a farm, the prior owner had allowed the farmland designation on the Property to lapse after failing to file the required Application for Farmland Assessment with the Township prior to the annual August 1 deadline. (*Id.*).[2] After purchasing the Property, Plaintiff immediately began cultivating and utilizing the land as a farm in an effort to restore the Property's farmland designation. On July 29, 1998, in accordance with the requirements of the New Jersey Farmland Assessment Act of 1964, 54:4-23.1 *et seq.*, Plaintiff filed an Application for Farmland Assessment with Plumsted Township. (*Id.* at ¶ 24). During his first year of ownership, Plaintiff raised, bred and sold between twelve and seventy-five hogs and planted and harvested approximately forty acres of rye straw on the Property. (*Id.* at ¶ 15).

Throughout 1999, Plaintiff continued to utilize the Property for farmland operations increasing the number of acres dedicated to rye straw to approximately fifty. (*Id.* at ¶ 16). In keeping with the requirements of the Farmland Assessment Act, he filed another Application for Farmland Assessment with the Township on July 20, 1999. (*Id.* at ¶ 24). In 2000, after having devoted the Property to agricultural and horticultural uses for two consecutive years, Plaintiff received a farmland designation on the Property. In 2001, he continued farmland operations on the Property and increased his rye straw crops an additional ten acres to approximately sixty acres. (*Id.* at ¶ 17). In

---

[2] Pursuant to the New Jersey Farmland Assessment Act of 1964, N.J.S.A. 54:4-23.1 *et seq.*, individuals who farm at least five contiguous acres and produce gross sales of at least $500.00 per year for the first five acres and an average of $5.00 per acre for each additional acre, and who have devoted that land to agricultural or horticultural uses for at least two years prior to the tax year, can file an Application for Farmland Assessment with the Township in which the property is located in order to obtain a farmland designation. (Compl. at ¶ 14). The Application is required to be filed annually on or before August 1 of the pre-tax year. (*Id.*). In assessing the value of "land which qualifies as land actively devoted to agricultural or horticultural use[,]" a Tax Assessor may use his or her "personal knowledge, judgment and experience as to the value of land in agricultural or horticultural use[.]" N.J.S.A. 54:4-23.7.

3

2002, he purchased an additional twenty-six acres of land adjacent to his existing acreage. From 2002 to February 2008, Plaintiff maintained his livestock operations, cultivated approximately sixty acres of rye straw and utilized the remaining acreage as woodlands. (*Id.* at ¶¶ 18-19). He purchased an additional acre of land in 2007. In 2008, Plaintiff cleared approximately twenty acres of woodland, wherein he placed additional penning for livestock. (*Id.* at ¶ 20). The following year, he purchased an additional two acres of adjacent land, bringing the total size of the Property to approximately 100 acres. (*Id.* at ¶ 21). He also added to his livestock operations by acquiring twelve Texas Longhorn cattle which he penned on the Property. (*Id.*). In 2012, Plaintiff added twenty acres of corn to his farming operation and increased his livestock to include upwards of ninety hogs, twelve beef cattle, three horses, twenty-three sheep, three goats and twenty-five chickens. (*Id.* at ¶ 22). As of August 2013, he continued to maintain a robust farming operation on the Property. (*Id.* at ¶ 23).

In late July of each year, Plaintiff would file his Application for Farmland Assessment with Defendant Maureen S. Francis, the Tax Assessor for the Township. (*Id.* at ¶ 25). In those applications, Plaintiff would seek farmland designation for ninety of the 100 acres of the Property (*Id.* at ¶ 26). The remaining ten acres were reserved for storage and were not specifically utilized for farm or woodland operations. (*Id.*). Accordingly, up until 2010, Plaintiff received farmland designation for approximately ninety of the 100 acres. (*Id.*). In 2010, however, he allegedly received a call from Defendant Ryan P. Allen, Senior Planner with the Ocean County Department of Planning, notifying him that the Township had reduced his farmland designation to ten acres. (*Id.* at ¶ 27). According to Plaintiff, he never received any notification or explanation from the Township or Defendant Francis prior to the reduction. (*Id.*). After receiving the notification, Plaintiff inquired as to the validity of Allen's statements from Defendant Francis who confirmed the decrease in farmland

designation. (*Id.* at ¶ 28). According to Plaintiff, Francis advised him at that time that the reduction was based on her having viewed an aerial photograph of the Property on Google Maps and observed that a portion of the Property was being used to store scrap metal. (*Id.*). While Plaintiff admits to storing scrap metal on the Property, he contends that it was placed on the ten acre parcel for which he did not seek farmland designation. (*Id.* at 28-29). He subsequently "entered into the tax appellate process in the tax year 2010 . . . to appeal the downgrade of designated acreage by Defendant Francis." (*Id.* at ¶ 30). The tax appeal was later denied leaving Plaintiff with farmland designation on only ten of the ninety acres. (*Id.*).

Plaintiff alleges that the initial decrease and subsequent elimination of his farmland designation was the result of an unlawful conspiracy amongst the named Defendants that began in 2009. According to Plaintiff, a neighbor contacted the Plumsted Township Police Department in January 2009 to complain of noise emanating from dirt bikes being driven on the Property by Russo's children. (*Id.* at ¶ 34). Defendant Michael Lynch, the Public Safety Director for the Township who was also one of Russo's neighbors, thereafter allegedly ordered a helicopter fly-by of the Property to conduct surveillance. (*Id.* at ¶ 35). According to Plaintiff, "the images displayed nothing more than a few barn structures and open space." (*Id.*). Several months later, in March or April of 2009, Defendant Lynch allegedly "climbed over the gate to the Property . . . and verbally accosted Plaintiff" after hearing the sound of dirt bikes. (*Id.* at ¶ 36). He later allegedly ordered a tow truck to the Property to tow the bikes away, however, no action was ultimately taken. (*Id.*). Throughout the remainder of 2009, the Plumsted Township Police Department issued approximately fifty tickets to Plaintiff for violating the Township's local noise ordinance based on his children's continued operation of dirt bikes on the Property. (*Id.* at ¶ 37). In late 2009, however, Plaintiff's

tickets were dismissed after it was determined that the Township's noise ordinance was improperly drafted and unenforceable. (*Id.*).

In December 2009 or January 2010, then-Mayor Ronald S. Dancer called a Township meeting to discuss the "dirt bike issue" which was attended by, amongst others, Defendant Lynch, Defendant David Friedman, District Director of the Ocean County Soil Conservation District, and an official from the New Jersey Department of Environmental Protection ("DEP"). (*Id.* at ¶ 38). According to Plaintiff, at that meeting, Defendant Dancer "consistently encouraged the DEP official to start an investigation of . . . [the] Property, alleging that [it] was being utilized for illegal dumping[.]" (*Id.*). It appears from the record that no immediate action was instituted.

In late July 2010, seven months after the Township meeting, Plaintiff filed his annual Application for Farmland Assessment seeking farmland designation for the full ninety acres in question. (*Id.* at ¶ 30). Again, he received farmland designation for only ten acres. (*Id.*). In early 2011, the Township adopted a new noise ordinance which addressed the legal deficiencies of the prior version. (*Id.* at ¶ 39). In the months after its adoption, the Plumsted Police Department allegedly returned to Plaintiff's Property on several occasions to take noise readings from the dirt bikes. (*Id.*). According to Plaintiff, "[t]he dirt bike noise emissions were found to be below the legal noise limit under the new ordinance, and as a result of those readings, no new tickets were issued." (*Id.*). During this time period, Defendant Dancer allegedly "continued to seek out DEP involvement by and through Defendant David Friedman . . . who in turn continued to press the DEP to start an investigation at the Russo Property[.]" (*Id.* at ¶ 40). In mid-2011, the DEP launched an investigation of the Russo Property for illegal dumping. (*Id.* at ¶ 41).

In late July 2011, despite the ongoing investigation, Plaintiff once again filed his Application for Farmland Assessment seeking farmland designation for the full ninety acres. One month later, on

6

August 25, 2011, Plaintiff allegedly received a copy of correspondence between Defendant Francis and Defendant Glenn Riccardi, a Construction Code Official and Zoning Officer for Plumsted Township, in which Francis advised that no portion of Plaintiff's Property would be eligible for farmland designation due to "various reports and violations issued by various agencies." (*Id.* at ¶ 31). According to Plaintiff, "Defendant Riccardi agreed to the disqualification of the Russo Property, despite his full knowledge that the vast majority of the 100 acre site was being utilized for farming." (*Id.*). Plaintiff alleges that Defendant Dancer was complicit in the disqualification because he "sits on the Zoning Board[] to which Defendant Riccardi answers." (*Id.*).

To date, Plaintiff continues to maintain the 100 acre property without the benefit of a farmland designation. (*Id.* at ¶ 32). He continues to file his Application for Farmland Assessment on a yearly basis, however, the Township has repeatedly denied a farmland designation for any acreage. (*Id.*). According to Plaintiff, "[t]he failure to be able to obtain a farmland designation has seriously and significantly impaired [his] operations . . . [and] has . . . forced [him] to sell off livestock, and non-related properties and equipment to fund continued farming operations[.]" (*Id.* at ¶ 33). He contends that he "will soon no longer be able to maintain his farm, or pay the property taxes on the Property[]" and that Defendants' "systematic abuse" and denial of farmland designation "has effectively resulted in a regulatory taking of [the Property] in violation of the Fifth and Fourteenth Amendments to the United States Constitution." (*Id.* at 42).

On August 23, 2013, Plaintiff filed a one-count Complaint in the United States District Court for the District of New Jersey. Defendant Ryan P. Allen filed the instant Motion to Dismiss, or in the alternative, Motion for Summary Judgment or Motion for a More Definite Statement on September 19, 2013. Plaintiff filed his Opposition to Defendant Allen's Motion on October 7, 2013. On October 11, 2013, Defendants Township of Plumsted, Ronald S. Dancer, Michael Lynch, Glenn Riccardi and

7

Maureen S. Francis filed a motion requesting the same relief relying on the Brief and Certification filed in support of Defendant Allen's motion. On November 14, 2013, Defendant David Friedman filed a similar motion also relying on Defendant Allen's Brief and Certification.

## II. DISCUSSION

### A. Motion to Dismiss Standards

#### 1. FED. R. CIV. P. 12(b)(1)

Pursuant to FED. R. CIV. P. 12(b)(1), the Court must dismiss a complaint, in whole or in part, if the plaintiff fails to establish that the Court has jurisdiction over the claim. Rule 12(b)(1) may be invoked in an attack on "the existence of subject-matter jurisdiction in fact, quite apart from any pleading." *Cohen v. Kurtzman*, 45 F. Supp. 2d 423, 428 (D.N.J. 1999) (citing *Mortensen v. First Fed. Sav. & Loan Ass'n,* 549 F.2d 884, 891 (3d Cir. 1977)). In such a case, a court may "decide for itself the factual issues which determine jurisdiction." *Id.* In doing so, "the Court is not confined to examining the face of the pleading, but may consider other evidence demonstrating the existence or lack of jurisdiction[.]" *Kenny v. United States,* 2009 U.S. Dist. LEXIS 8322, at *5 (D.N.J. 2009) (citing *Berardi v. Swanson Mem'l Lodge No. 48 of Fraternal Order of Police,* 920 F.2d 198, 200 (3d Cir. 1990)). The plaintiff, as the party asserting jurisdiction, "bears the burden of showing that the case is properly before the court at all stages of the litigation." *Packard v. Provident Nat'l Bank*, 994 F.2d 1039, 1045 (3d Cir. 1993).

#### 2. FED. R. CIV. P. 12(b)(6)

FED. R. CIV. P. 12(b)(6) provides for the dismissal of a complaint if the plaintiff "fail[s] to state a claim upon which relief can be granted[.]" When reviewing a motion to dismiss on the pleadings, courts are required to "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the

complaint, the plaintiff may be entitled to relief." *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008) (internal citation and quotations omitted). In other words, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007)). "The inquiry is not whether [a] plaintiff[] will ultimately prevail in a trial on the merits, but whether [he or she] should be afforded an opportunity to offer evidence in support of [his or her] claims." *In re Rockefeller Ctr. Props., Inc.*, 311 F.3d 198, 215 (3d Cir. 2002). The Supreme Court has clarified, however, that "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Iqbal*, 556 U.S. at 678. Furthermore, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citing *Twombly*, 550 U.S. at 555).

"To decide a motion to dismiss, courts generally consider only the allegations contained in the complaint, exhibits attached to the complaint and matters of public record." *Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993) (citations omitted). The court may consider "undisputedly authentic document[s] that . . . [are] attache[d] as an exhibit to a motion to dismiss if the plaintiff's claims are based on the [attached] document[s]." *Id.* "[D]ocuments whose contents are alleged in the complaint and whose authenticity no party questions, but which are not physically attached to the pleading, may [also] be considered." *Pryor v. Nat'l Collegiate Athletic Ass'n*, 288 F.3d 548, 560 (3d Cir. 2002) (citation omitted); *see also U.S. Express Lines, Ltd. v. Higgins*, 281 F.3d 383, 388 (3d Cir. 2002) (citing *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997) ("Although a district court may not consider matters extraneous to the pleadings, 'a document integral to or explicitly relied upon in the

9

complaint may be considered without converting the motion to dismiss into one for summary judgment.'"). The Court may not, however, "rely on other parts of the record in making its decision." *See Vartan v. Wells Fargo Bank Nw., N.A.*, 2012 U.S. Dist. LEXIS 54467, at *9-10 (M.D. Pa. Apr. 18, 2012) (citing *Jordan v. Fox, Rothschild, O'Brien & Frankel*, 20 F.3d 1250, 1261 (3d Cir. 1994)).

To determine whether a complaint is plausible on its face, courts conduct a three-part analysis. *Santiago v. Warminster Twp.*, 629 F.3d 121, 130 (3d Cir. 2010). First, the court must "'tak[e] note of the elements a plaintiff must plead to state a claim.'" *Id.* (quoting *Iqbal*, 556 U.S. at 675). Second, the court should identify allegations that, "'because they are no more than conclusions, are not entitled to the assumption of truth.'" *Id.* at 131 (quoting *Iqbal*, 556 U.S. at 680). Finally, "'where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief.'" *Id.* (quoting *Iqbal*, 556 U.S. at 680). This plausibility determination is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679. A complaint cannot survive where a court can only infer that a claim is merely possible rather than plausible. *Id.*

### B. Count One: 42 U.S.C. § 1983 – Violation of Fifth Amendment Deprivation of Property

In Count One, Plaintiff alleges a violation of 42 U.S.C. § 1983 by all Defendants. Specifically, Plaintiff alleges that "Defendant Dancer, in concert with the other Defendants, entered into an unlawful conspiracy to target and harass [him], and to financially harm [him] so that he would no longer be able to operate or maintain his Property." (Compl. at ¶ 44). Plaintiff further alleges that Defendants acted under color of state law to deprive him of certain constitutionally protected rights under the Fifth and Fourteenth Amendments – namely, (1) the right to be free of deprivation of property without due process of law and (2) the right to just compensation for the taking of property. (*Id.* at ¶ 46). Plaintiff contends that Defendants' conduct amounts to "an

unauthorized regulatory taking of [his] private property," and that Defendants' "excessive and warrantless regulation of . . . [the] Property . . . has directly and proximately resulted in the violation of Plaintiff's constitutional rights." (*Id.* at ¶ 48). Accordingly, Plaintiff demands compensatory and punitive damages and "equitable relief . . . as allowed by 42 U.S.C. [§] 1983, including the enjoining and permanent restraining of [Defendants' alleged] violations, and direction to Defendant[s] to take such affirmative action as is necessary to ensure that the effects of . . . [their violations] are eliminated and do not continue to affect Plaintiff or others[.]" (*Id.* at 14-15).

  Defendants argue that Plaintiff's Complaint should be dismissed for five reasons. First, Defendants argue that Plaintiff's § 1983 claim should be dismissed because it is barred by the two-year statute of limitations. (Def. Allen's Br. in Supp. of Mot. to Dismiss ("Allen Br.") at 3). Second, Defendants argue that Plaintiff cannot establish a deprivation of any constitutional or federal statutory right, within the meaning of 42 U.S.C. § 1983, that resulted from Defendants' alleged conduct. (*Id.* at 4-5). Third, Defendants argue that Plaintiff has failed to allege sufficient factual allegations to state a claim for civil conspiracy under § 1983. (*Id.* at 5-7). Fourth, Defendants argue that this Court lacks subject matter jurisdiction under the Tax Injunction Act ("TIA"), 28 U.S.C. § 1341, because "Plaintiff's complaint is undeniabl[y] seeking to 'enjoin, suspend or restrain the assessment, levy or collection of any tax under State law[]'" within the meaning of the statute. (*Id.* at 13). Fifth, Defendants argue that Plaintiff's Fifth Amendment regulatory taking claim fails as a matter of law because "a denial of farmland assessment designation . . . is not a taking issue, [but] rather a taxing issue." (*Id.* at 14). More specifically, Defendants contend that "Plaintiff's continuing possessory interest in the property prevents him from establishing a Takings Clause violation." (*Id.*

at 16). The Court will first consider Defendants' argument that Plaintiff's § 1983 claim should be dismissed because this Court lacks jurisdiction under the TIA.[3]

## C. Tax Injunction Act

The Tax Injunction Act ("TIA"), 28 U.S.C. § 1341, states that "[t]he district courts shall not enjoin, suspend or restrain the assessment, levy or collection of any tax under State law where a plain, speedy and efficient remedy may be had in the courts of such State." Although § 1983 claims are not specifically addressed in the language of the TIA, the Supreme Court has held that, with regard to a § 1983 challenge to the administration of state tax laws, the principle of comity "bars federal courts from granting damages relief in such cases." *Fair Assessment in Real Estate Ass'n v. McNary*, 454 U.S. 100, 105-07, S. Ct. 177, 70 L. Ed. 2d 271 (1981). Thus, even though the TIA expressly prohibits a federal court from providing declaratory relief in state tax cases, the principle of comity "supplements the [TIA] and bars federal courts from awarding monetary damages in state tax disputes." *Frybarger v. N.J. Dep't of the Treasury*, 2006 U.S. Dist. LEXIS 93365, at *5-6 (D.N.J. Dec. 27, 2006). Accordingly, such § 1983 plaintiffs must "seek protection of their federal rights by state remedies, provided of course that those remedies are plain, adequate, and complete, and may ultimately seek review of the state decisions in [the United States Supreme Court]." *Fair Assessment*, 454 U.S. at 116. A state remedy will be deemed sufficient if it "provides the taxpayer with a 'full hearing and judicial determination' at which [the taxpayer] may raise any and all constitutional objections." *Hardwick v. Cuomo*, 891 F.2d 1097, 1105 (3d Cir. 1989) (citing *California v. Grace Brethren Church*, 457 U.S. 393, 412, 102 S. Ct. 2498, 73 L. Ed. 2d 93 (1982)). As a threshold matter, the Court must determine whether Plaintiff's § 1983 claim is a challenge to a

---

[3] *See Dickerson v. Bank of Am., N.A.*, 2013 U.S. Dist. LEXIS 37639, at *2 (D.N.J. Mar. 19, 2013) (stating that "When a motion under Rule 12 is based on more than one ground, the court should consider the 12(b)(1) challenge first because if it must dismiss the complaint for lack of subject matter jurisdiction, all other defenses and objections become moot.") (internal quotations and citation omitted).

state tax assessment, or brought under § 1983 to redress alleged constitutional violations. *See Frybarger*, 2006 U.S. Dist. LEXIS 93365, at *8.

Here, Defendants argue that "Plaintiff's complaint is undeniabl[y] seeking to 'enjoin, suspend or restrain the assessment, levy or collection'" of a State tax because the "fundamental allegations of the . . . complaint involve the denial of a farmland assessment and relief therefrom." (Allen Br. at 13). Plaintiff argues in opposition that Defendants' assertion that the denial of his farmland assessment "is a question of . . . New Jersey's tax system, and that such a question should not be considered in federal court[] . . . misrepresents completely the cause of action set forth in [his] complaint, and mis-categorizes [his] pleading as merely a tax appeal." (Pl.'s Mem. in Opp'n to Def. Allen's Mot. to Dismiss ("Pl.'s Opp'n Br.") at 26-27). According to Plaintiff, Defendants' assertion "is a gross mischaracterization of Plaintiff's pleading . . . [and] [t]his case is about so much more than a tax abatement." (*Id.* at 27).

After accepting Plaintiff's factual allegations as true and construing the Complaint in the light most favorable to the Plaintiff, the Court finds Plaintiff's claim is best understood as a challenge to the collection of a state tax falling squarely within the ambit of the TIA. Despite Plaintiff's efforts to avoid a direct challenge of the tax assessment, Plaintiff's claim indirectly challenges the validity of the procedures implemented and final determinations made by the Township's Tax Assessor with respect to whether a farmland designation on Plaintiff's Property was justified. For example, the Complaint explicitly states that this action "result[s] from damages incurred due to the unlawful termination of Plaintiff's farmland designation[]" and contends that the farmland designation "was wrongfully denied . . . in violation of [Plaintiff's] federal constitutional right against the unlawful taking of property as conferred to him pursuant to the Fifth Amendment[.]" (Compl. at ¶ 3). The Plaintiff further states that "[t]he failure to be able to obtain a

13

farmland designation has seriously and significantly impared [sic] [his] operations[]" and that "[he] will soon no longer be able to maintain his farm, or pay the property taxes on the Property." (*Id.* at 42). In order for this Court to provide relief for Plaintiff's alleged injuries – or, as he requests, "take such affirmative action as is necessary to ensure that the effects of . . . [Defendants' alleged violations] are eliminated and do not continue to affect Plaintiff or others[,]" (*Id.* at 14-15) – the Court would necessarily have to invalidate the Township's tax assessment of Plaintiff's Property – a request which is expressly prohibited by the TIA.

In addition, Plaintiff's allegations essentially involve various actions by Defendants in furtherance of the collection of state taxes. While these claims do not directly attack the tax assessment itself, "a judicial determination of official liability for the acts complained of, even though necessarily based upon a finding of bad faith, would have an undeniable chilling effect upon the action of all . . . officers." *Fair Assessment*, 454 U.S. at 115. Such federal involvement would "in every practical sense operate to suspend collection of the state taxes." *Id.* Under the principles of federalism, absent allegations that a state forum would not provide a plain, speedy and efficient remedy, which Plaintiff does not allege here, federal courts are prohibited from exercising jurisdiction over the administration of state taxes. *Id.* at 116. In that regards, multiple courts have held that New Jersey does maintain a plain, speedy, and efficient remedy to challenge property assessment procedures. *See Frybarger*, 2006 U.S. Dist. LEXIS 93365, at *9; *Behe v. Chester Cnty. Bd. of Assessment Appeals*, 952 F.2d 66, 68 (3d Cir. 1991). Because Plaintiff is attempting to enjoin or restrain the assessment of taxes by Plumsted Township, and because Plaintiff has provided no basis for the Court to conclude that New Jersey does not provide plain, speedy and efficient remedies through its state court system, the Court finds that it lacks subject matter jurisdiction over

Plaintiff's claims, and, therefore, those claims are dismissed with prejudice since amendment to the Complaint would be futile.

Even assuming, *arguendo*, that the TIA does not divest the Court of jurisdiction to entertain Plaintiff's § 1983 claim, Plaintiff's assertion that Defendants' conduct amounts to "an unauthorized regulatory taking of [his] private property," (Compl. at ¶ 48), fails as a matter of law. As the Supreme Court has recognized, "[i]t is beyond dispute that taxes . . . are not 'takings'" within the meaning of the Takings Clause of the Fifth Amendment to the United States Constitution and the Supreme Court's Fifth Amendment jurisprudence "does not affect the ability of governments to impose property taxes, user fees, and similar laws and regulations that may impose financial burdens on property owners." *Koontz v. St. Johns River Water Mgmt. Dist.*, 133 S. Ct. 2586, 2600-01, 186 L. Ed. 2d 697 (2013). Accordingly, while the Township's denial of farmland designation and the concomitant increase in Plaintiff's property taxes may have imposed a greater financial burden on the Plaintiff, such measures do not constitute a regulatory taking within the meaning of the Fifth Amendment, and, therefore, Plaintiff's Complaint fails to state a claim upon which relief can be granted.

## III. CONCLUSION

For the reasons set forth above, Defendants' Motions to Dismiss Plaintiff's Complaint are granted. Defendants' alternative Motions for Summary Judgment and Motions for a More Definite Statement are dismissed as moot. An appropriate Order follows.

Date: July 11, 2014

PETER G. SHERIDAN, U.S.D.J.